Louis C. Bennett *vs.* Grand Union Tea Company.

DECEMBER 3, 1948.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Condon, J. This is an employee's petition for workmen's compensation which is here on petitioner's appeal from the decree of the superior court denying and dismissing the petition.

The appeal rests substantially on the ground that there is no legal evidence to support certain findings of fact in the decree. Summarized, those findings are that petitioner's injury was not caused by the accident in which he was involved; that he has failed to sustain by credible evidence of probative force that his incapacity was in any way connected with that accident; and that he has not suffered any incapacity for work from such accident.

Respondent argues that such findings of fact are made conclusive upon this court by general laws 1938, chapter 300, article III, §6, and that there is legal evidence to support them. Hence it contends that petitioner's appeal should be denied and dismissed. We must, therefore, examine the transcript but merely to determine if there is such evidence and not to weigh it. Only if we find that there is no such evidence will we review the superior court's findings. *Rosewater* v. *Jean's Inc.*, 72 R. I. 489.

The transcript discloses the following facts. On January 2, 1947 petitioner, while operating a delivery truck in the course of his employment by the respondent, was involved in a traffic accident on a public highway in Providence. The truck collided with an automobile and was "spun around" by the collision but resulted in only slight damage to its right rear wheel. Petitioner testified that he became frightened as he noticed a collision was about to happen, and that his head was bumped against the side of the truck and his chest against the steering wheel by the impact of the colliding vehicles. After the collision he was stunned for a short time but continued with his work that morning. However, later in the day, about noon, he did not feel well and went home and rested on a couch. He further testified that on the next day he reported for work but found he could not work and went home. He has not worked anywhere since that time.

On January 4, 1947 while at breakfast at home petitioner suffered a "cerebral spasm," according to the testimony of Dr. Whitman Merrill, who was called at that time to treat him and is still treating him. One week later, on January 11, he suffered a cerebral hemorrhage at his home and he is now totally disabled. Doctor Merrill testified concerning the onset of the hemorrhage "that there has been no history of injury that would cause this thing." He was further cross-examined: "And throughout that period of treatment you have never received any history of trauma which would cause that condition you found?" He an-

swered: "That is true." Previously, on direct examination, he was asked the question whether petitioner had ever mentioned to him that he, petitioner, was frightened at the time of the accident, and the doctor answered "Not particularly * * *."

Doctor Merrill also testified that there were four main factors to look for in a case of cerebral hemorrhage, namely, high blood pressure, hardening of the arteries, nervousness and excitement, and injury. Petitioner thereupon sought to show by Dr. Merrill's testimony that his injury could be due to fright caused by the sense of impending collision. In response to a hypothetical question which included that element, the doctor expressed the opinion that petitioner's hemorrhage could have been accelerated by such fright because it would raise the blood pressure. To another hypothetical question which included the element of a blow on the side of petitioner's head at the time of the accident, the doctor testified that it also could have accelerated or precipitated the cerebral hemorrhage. He further testified that petitioner had a moderate amount of hardening of the arteries for a man of sixty-four years but not enough to be the cause of a cerebral hemorrhage. He expressed a like opinion as to petitioner's blood pressure being the cause of the hemorrhage and stated that he had not found the blood pressure excessively high for his age.

Doctor Wilfred Pickles examined the petitioner on January 3, 1948 and testified on his behalf. At the time of such examination petitioner gave Dr. Pickles a history of his case which included the following: "He believes he struck his head on some portion of the machine, but he was not made unconscious. He continued at his work for the rest of the trip and noticed that he had trouble holding his pencil with his right hand. He then went home, as he did not feel able to continue working." Based upon such history and a complete physical examination of the petitioner, Dr. Pickles expressed the opinion that he had "a good physical set-up for a spontaneous cerebral hemorrhage." He

testified that petitioner apparently had a trauma before the hemorrhage and such trauma could have been "the precipitating factor in bringing about the brain damage." But when he was asked whether petitioner's condition could be reasonably attributed to the accident of January 2, 1947, he answered: "I don't think I would go that far." He then went on to say that it was very doubtful and that he was unable to tell whether the hemorrhage was unrelated to the injury. He further testified that fright or a blow could be a precipitating factor but that he did not know whether or not the accident precipitated the hemorrhage although it could have been a factor.

The foregoing is a summary of what we think is the salient medical testimony on the question whether the petitioner's accident of January 2, 1947 was the cause or a contributing cause of the cerebral spasm which he suffered on January 4 and of the cerebral hemorrage on January 11, 1947. Based on such testimony the trial justice could have reasonably concluded that the spasm and hemorrhage were due to other factors inherent in petitioner's general physical condition and not to the accident. This is especially true when we consider that there was no suggestion by the petitioner at the time of the accident or reasonably thereafter that he had sustained a blow on his head or experienced fright until he gave such a history to Dr. Pickles over one year after the accident and after Dr. Merrill had been first called to treat him. Petitioner never told Dr. Merrill anything about a blow or fright. And apparently he did not tell anyone else except Dr. Pickles, if the testimony of respondent's witness Dewey Smith was believed by the trial justice.

That witness, who was an investigator for respondent's insurance carrier, interviewed petitioner on February 4, 1947 concerning the accident. He testified that with the permission of Dr. Merrill he visited the home of the petitioner on that date and in the presence of his daughter-in-law, Martha Bennett, he asked petitioner if he could

recall any blow on his head and that he answered he could not. Smith also testified that petitioner stated, in response to a question, that he worked after the accident and also on the next day. Those answers along with others given by the petitioner at the interview were written down on several pages in narrative form by Smith and then read to the petitioner. Thereafter the pages were signed by Martha Bennett, as petitioner's right arm was paralyzed.

Martha Bennett also testified. She did not categorically deny that petitioner had given the answers above referred to but she did testify substantially to the effect that he could not talk clearly and that it was difficult to understand him. Of course, whether or not he was in a proper condition to submit to an interview so as to lend credence to Dewey Smith's report of what petitioner said at that time was clearly a matter to be weighed by the trial justice. If, in the circumstances, he was inclined to credit Smith and conclude that petitioner did not sustain a blow on the head such a conclusion would not be reviewable by this court. In a workmen's compensation case we do not pass upon the credibility of the witnesses.

In the instant case it appears to us, therefore, from a careful reading of the transcript that there was a conflict in the evidence as to whether petitioner had actually received a blow on the side of his head. There was petitioner's testimony that he had received such a blow. On the other hand, there was Dr. Merrill's testimony that he had received from him no history of a blow, and Dewey Smith's testimony that on February 4, 1947 petitioner stated to him that he could recall no blow. In such state of the evidence the trial justice could have inferred that he in fact did not receive any blow that would account for the cerebral hemorrhage. From Dr. Merrill's testimony he could have inferred also that petitioner did not receive such a fright at the time of the accident as would constitute a cause for the hemorrhage.

The apparent uncontradicted medical testimony of Dr. Merrill that petitioner's cerebral hemorrhage could have been precipitated or accelerated by a blow or fright did not necessarily bind the trial justice to find that the accident was the cause of his injury. It was the duty of petitioner to prove by a fair preponderance of the credible evidence that he had suffered a blow on his head and had experienced fright. The trial justice was not bound to believe petitioner's testimony to that effect. As we have observed above, from the other testimony in the case he could have reasonably inferred that petitioner suffered neither a blow nor fright, for if he had he would have told Dr. Merrill and Dewey Smith who saw him a short time after the accident.

Notwithstanding Dr. Merrill's testimony based upon the hypothetical questions containing respectively the factors of a blow on the head received by petitioner and of fright at the moment of the impending collision of the automobiles, the trial justice reasonably could have concluded that there was no credible basis for either hypothetical question and hence that the accident did not cause the injury which is incapacitating the petitioner.

We have discussed the evidence at some length in order to show why we are of the opinion that there was at least some legal evidence upon which the trial justice could rest his refusal to be governed by that part of the medical testimony which was based upon such questions. Since there is such evidence his findings of fact are conclusive upon us.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*George A. Ajootian,* for petitioner.

*Worrell and Hodge, Lee A. Worrell,* for respondent.